IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Stacey Lynn Fowler, | ) | Civil Action No.  2:16-cv-02387-TMC-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Nancy A. Berryhill, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).

The Plaintiff, Stacey Lynn Fowler, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 37 years old on her alleged disability onset date of May 17, 2014. (R. at 17, 33.) She alleged disability due to status-post multiple traumatic injuries including bilateral ankle fractures as well as anxiety. (R. at 19, 89.) Plaintiff has a tenth-grade education and past relevant work as, *inter alia*, an order filler. (R. at 34, 22-23.)

Plaintiff protectively filed an application for DIB and SSI on May 21, 2014. (R. at 17.) Her applications were denied initially and on reconsideration. (R. at 17.) After a hearing before an Administrative Law Judge (ALJ) on August 28, 2015, the ALJ issued a decision on November 20, 2015, in which the ALJ found that Plaintiff was not disabled. (R. at 17-23.) The Appeals Council

denied Plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> (2)     The claimant has not engaged in substantial gainful activity since May 17, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3)     The claimant has the following severe impairments: status-post multiple traumatic injuries including bilateral ankle fractures (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can have no exposure to work hazards; she cannot climb; and she can occasionally stoop, kneel, crouch, and crawl.
>
> (6)     The claimant is capable of performing past relevant work as an order filler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> (7)     The claimant has not been under a disability, as defined in the Social Security Act, from May 17, 2014, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(R. at 19-22.)

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42

U.S.C. § 423(a). The Act also provides that supplemental security income (SSI) disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq.* "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[1]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context); *see also Brown v. Comm'r*, 873 F.3d 251, 254-55 (4th Cir. 2017). If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i). She must make a prima facie showing of disability by showing that she is unable to return to her past

---

[1]"[T]he definition of disability is the same under both DIB and SSI . . . ." *Mason v. Colvin*, Civ. A. No. 9:12-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (citing *Emberlin v. Astrue*, Civ. A. No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. *See Grant*, 699 F.2d at 191; *see also Brown*, 873 F.3d at 255. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *See Grant*, 699 F.2d at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The Plaintiff contends that the Commissioner erred in failing to find her disabled. In her opening Brief, Plaintiff asserts that "[s]ubstantial evidence does not support the ALJ's rejection of the evidence regarding Ms. Fowler's pain." (Dkt. No. 9 at 6.) Plaintiff further states,

> Ms. Fowler's complaints to both her general practitioner, Dr. Rencken, and to her orthopaedic specialists at MUSC are consistent throughout the medical records. The ALJ's decision overestimates Ms. Fowler's level of functioning and is selective in choosing those medical records to which significant weight was afforded.

(Dkt. No. 9 at 6.) In her Reply Brief, Plaintiff makes the same argument and elaborates more on her reports of pain. (*See* Dkt. No. 11 at 3-4.) Plaintiff appears to complain that the ALJ erred in failing to analyze "all of the relevant evidence." (Dkt. No. 11 at 2.)

In asserting the Commissioner's decision should be affirmed, Defendant asserts that "Plaintiff's lack of detail [in her brief] limits the Commissioner's ability to respond." (Dkt. No. 10 at 5.) Defendant states,

> In contrast to Plaintiff's complaints, no physician has placed any limitations on her ability to work. On the contrary, Dr. Hartsock released Plaintiff to work at her three-month follow-up appointment (Tr. 408) and advised her to slowly resume her normal activities following hardware removal in August 2015 (Tr. 435-36). While Dr. Rencken prescribes pain medication to Plaintiff, his examinations have not revealed any significant abnormalities and he has not offered any medical opinion (Tr. 400-06). The medical evidence as a whole demonstrates that Plaintiff retains the ability to perform her past work, as the ALJ found (Tr. 22-23).

(*Id.*)

The undersigned agrees with Defendant that Plaintiff's allegation or allegations of error are difficult to understand. To the extent she asserts the ALJ failed to analyze all relevant evidence, Plaintiff has not pointed to anything specific that she contends the ALJ erred in failing to analyze. The ALJ noted that Plaintiff was involved in a serious motor vehicle accident in May of 2014 after which she was transported to the Medical University of South Carolina. (*See* R. at 22.) The ALJ noted as follows:

> [Plaintiff] was found to have a fracture of the left 1st through 6th ribs, a nondisplaced sternal manubrium fracture, a superior endplate compression fracture of the T4 vertebral body, fracture of the right posterior acetabulum, and bilateral ankle fractures. She underwent open reduction and internal fixation of both ankles and

repair of her lacerations without complication. The claimant was referred to physical therapy and was eventually cleared for discharge home.

(R. at 22.) The ALJ noted that on Plaintiff's follow up in June of 2014, "the claimant was noted to be doing 'relatively well.' (Exhibit 3F)." (R. at 22.) The ALJ further stated,

> [Plaintiff] was weaning off her morphine. On physical examination, she was in no acute distress. Her incisions were healing well. There was no evidence of infection. Sensation was intact. In July 2014, she was noted to have bilateral 5/5 quad strength with full range of motion of her knees. (Exhibit 5F). X-rays showed no change in alignment with some interval healing of bilateral bimalleolar ankle fractures.

(R. at 22.)

The ALJ noted that Plaintiff had seen Dr. Rencken on multiple occasions "with complaints of ankle pain and back pain. (Exhibit 7F)." (R. at 22.) The ALJ noted that Dr. Rencken indicated Plaintiff had tenderness over both ankles and reported pain with walking. (R. at 22.) The ALJ further noted that Dr. Rencken prescribed Percocet, Mobic, and a fentanyl patch, and that Plaintiff "eventually reported improvement in her pain symptoms with increased fentanyl." (R. at 22.)

The ALJ also noted that when Plaintiff "continued to report ongoing ankle pain, she underwent x-rays that showed that her syndesmosis screw had fractured without displacement." (R. at 22.) Plaintiff "underwent removal of hardware from both ankles in August 2015." (R. at 22.) The ALJ's decision further states,

> On follow up with Dr. Rencken, the claimant reported that her ankles were "doing better." (Exhibit 8F). She was placed on a 10-day regimen of Keflex. Dr. Rencken indicated that he would have her back if her ankle pain worsened, but there are no additional medical records in evidence to suggest that she has experienced worsening ankle pain.
>
> Although the claimant's allegations of such significant limitations and pain were not fully consistent with the medical evidence of record, the undersigned accorded the claimant the benefit of the doubt and further reduced the residual functional capacity to include her limitations as described above. The history of fractures of both ankles with evidence of degenerative joint disease involving those ankles causes the undersigned to limit the claimant to sedentary work with postural restrictions primarily to keep her off her feet during the workday. The evidence regarding back and hip complaints is not so impressive. A work hazards limitation[] was added due to the potential effects of pain medication. However, the undersigned cannot find the claimant's allegations that she is incapable of all work activity to be credible because of significant inconsistencies in the record as a whole.

(R. at 22.)

As noted above, Plaintiff pointed to nothing specific in her brief that she contends the ALJ failed to consider. Furthermore, "[w]hile the Commissioner's decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r*, 769 F.3d 861, 865 (4th Cir. 2014) (internal quotation marks and citations omitted)). Having reviewed the record, the undersigned finds no error with respect to relevant evidence Plaintiff contends the ALJ failed to consider. *See Wallace v. Colvin*, Civ. A. No. 8:14-cv-04395-DCN-JDA, 2016 WL 624947, at *13 (D.S.C. Jan. 21, 2016), *adopted at* 2016 WL 524269 (D.S.C. Feb. 10, 2016) (affirming and stating, *inter alia*, "[O]ther than disagreeing with the ALJ's findings, Plaintiff failed to direct the Court to any evidence the ALJ failed to consider.").

Plaintiff also asserts that "[s]ubstantial evidence does not support the ALJ's rejection of the evidence regarding Ms. Fowler's pain." (Dkt. No. 9 at 6.) As stated in *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996), "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 594. First, the plaintiff must present "objective medical evidence showing the existence of a medical impairment(s) which results from the anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks and citations omitted). The Fourth Circuit explained as follows:

> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.*; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

*Craig*, 76 F.3d at 595; *see also* SSR 96-7p, 1996 WL 374186, at *3 (listing factors "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements").[2]

In the case *sub judice*, the ALJ found that "that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (R. at 21.) However, the ALJ also found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 21.) The ALJ stated, *inter alia*,

> The evidence of record . . . fails to indicate that the claimant's history of bilateral ankle fractures has resulted in an inability to ambulate effectively. The evidence indicates that the claimant is capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living and has the ability to travel without companion assistance to and from a place of employment.

(R. at 20-21.) The ALJ also stated,

> Although the claimant's allegations of such significant limitations and pain were not fully consistent with the medical evidence of record, the undersigned accorded the claimant the benefit of the doubt and further reduced the residual functional capacity to include her limitations as described above. The history of fractures of both ankles with evidence of degenerative joint disease involving those ankles causes the undersigned to limit the claimant to sedentary work with postural restrictions primarily to keep her off her feet during the workday. The evidence regarding back and hip complaints is not so impressive. A work hazards limitation[] was added due to the potential effects of pain medication. However, the undersigned cannot find the claimant's allegations that she is incapable of all work activity to be credible because of significant inconsistencies in the record as a whole.

(R. at 22.)

---

[2]As explained by Magistrate Judge Hodges,
> The Social Security Administration . . . published SSR 16-3p, 2016 WL 1119029 (2016), which supersedes SSR 96-7p, eliminates use of the term "credibility," and clarifies that subjective symptom evaluation is not an examination of an individual's character. Because the ALJ decided this case prior to March 16, 2016, the effective date of SSR 16-3p, the court analyzes the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility. Although SSR 16-3p eliminates the assessment of credibility, it requires assessment of most of the same factors to be considered under SSR 96-7p.

*Keefer v. Colvin,* Civ. A. No. 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016).

Certainly Plaintiff suffered horrific injuries in May of 2014, which required surgery on both ankles to repair ankle fractures. (*See* R. at 373.) By July of 2014, Plaintiff was continuing to make progress, such that she was allowed "to progress to weightbearing as tolerated initially, using a walker." (R. at 383.) She was given a prescription for physical therapy "to work on range of motion of her ankles as well as strengthening"; she was also given a prescription for Norco "as she will likely have some increased pain with progressing her weightbearing status." (R. at 383.) By August of 2014, Dr. Hartsock, Plaintiff's surgeon, indicated that "x-rays . . . show both fractures have healed in satisfactory alignment with stable fixation." (R. at 408.) His notes from August of 2014 state, *inter alia*, "She can discontinue the cam boot and brace as well as a walker. She'll continue outpatient physical therapy for another 4-6 weeks. I'll see her back in 3 months with an AP, lateral, mortise view of both ankles. She can return to work whenever she feels ready." (R. at 408.) As the ALJ noted, when Plaintiff "continued to report ongoing ankle pain, she underwent x-rays that showed that her syndesmosis screw had fractured without displacement"; she "underwent removal of hardware from both ankles in August 2015." (R. at 22.) After her second surgery, Plaintiff saw Dr. Hartsock for a follow-up visit on August 18, 2015; he noted that "x-rays today confirm that the hardware has been removed from each ankle as planned . . ." (R. at 436.) He noted there was no erythema and no swelling, and he indicated that Plaintiff "can slowly resume her usual activities." (R. at 436.) Plaintiff saw Dr. Rencken on August 21, 2015 for ankle pain; Dr. Rencken noted that Plaintiff had "screws and plates taken out of both ankles and they are doing better." (R. at 405.) After the ALJ noted this visit with Dr. Rencken, the ALJ stated that "there are no additional medical records in evidence to suggest that she has experienced worsening ankle pain." (R. at 21.)

As noted above, the ALJ limited Plaintiff to a reduced range of sedentary work; his limitations "primarily . . . keep her off her feet during the workday." (R. at 21-22.) He also added a "work hazards limitation[] . . . due to the potential effects of pain medication." (R. at 22.) The ALJ thus found Plaintiff was greatly limited by the pain she suffers in her ankles, and he accounted for that pain by limiting her to sedentary work. The undersigned finds no reversible error here and therefore recommends affirming the Commissioner's decision. *See Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015) ("[I]t is possible for substantial evidence to support both a claimant's pain

allegations and the ALJ's decision that the claimant's pain does not affect her ability to work to the extent that the claimant alleges."); *Dalton v. Colvin*, Civ. A. No. 7:13cv00136, 2014 WL 3784484, at *10 (W.D. Va. July 31, 2014) ("The ALJ did not find that Dalton was pain free. To the contrary, the ALJ found that Dalton suffers from severe conditions that greatly limit her ability to function. The ALJ accounted for the limitations imposed by Dalton's conditions by limiting her to sedentary work, the lowest level of physical exertion.").

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

December 11, 2017
Charleston, South Carolina